OPINION OF THE COURT
James H. Shaw, Jr., J.
In this action to recover damages for personal injuries, defendant PACOA, an acronym for Paint Applicator Corporation of America, seeks summary judgment dismissing the complaint pursuant to CPLR 3212.
This lawsuit asserts claims of strict products liability, breach of express warranty, breach of implied warranty, and negligence against defendant PACOA and other defendants. The product alleged to be tortiously defective is Super Speed Seal— Prime Coat (Super Speed Seal), a liquid wood sealant that plaintiff alleges emits flammable vapors under conditions of ordinary use.
Plaintiff Theresa Joseph was employed by and working as a domestic servant in the home of defendants Ralph Lewis and Helen Lewis located at 535 East 19th Street, Brooklyn. Ralph Lewis owns defendant R. Lewis Construction Company, Inc. (Lewis Construction) and he engaged his company to finish a newly installed wood floor in the basement of the Lewis’ home. On July 25, 1989, defendant Lewis allegedly ordered two of his construction workers to apply Super Speed Seal to the floor.
On that date, as the Super Speed Seal was being applied to the floor, Joseph was in the basement engaged in her duties for the Lewis household. Plaintiffs allege that, as a result of the alleged lack of ventilation, the Super Speed Seal ignited and caused an explosion and a fire. Joseph, who was 33 years old at the time of the fire, allegedly sustained serious burns throughout her body, necessitating a prolonged hospitalization and several surgical skin grafts.
Defendant PACOA, in support of its motion for summary judgment, asserts that "it was not a distributor of the product, it was not in the chain of distribution of the product, and *97 therefore it should bear no responsibility for the happening of the incident.” The plaintiffs claim otherwise, pointing to the following allegations of PACOA’s involvement herein: (1) defendant Garco Shellac Co., Inc. (Garco) (the manufacturer of the Super Speed Seal) sold the product to PACOA; (2) invoices of defendant Primer Specialty Products Corp. (Primer Specialty) (a branch of Garco) reflecting the sale of Super Speed Seal to defendant Sol Passick & Son, Inc. (Sol Passick) (the retailer) were sent to PACOA; (3) PACOA was the addressee on every invoice prepared by Primer Specialty for the sale of Super Speed Seal to Sol Passick; (4) PACOA delivered each of Primer Specialty’s invoices for Super Speed Seal to defendant Paint Fair Stores, Inc. (Paint Fair Stores) (an incorporated association of paint retailers); (5) an employee of PACOA then prepared Paint Fair Stores’ checks, representing payment to defendant Primer Specialty; (6) an employee of PACOA also prepared Paint Fair Stores’ checks to itself, PACOA, in those situations where surcharges were due PACOA; (7) an employee of PACOA prepared bills to defendant Sol Passick for the purchase of Super Speed Seal; and (8) PACOA generally received payment from Paint Fair Stores for its participation in transactions for items that PACOA carried in its warehouse.
At the heart of plaintiffs’ argument that PACOA is part of the distributive chain is Primer Specialty’s bill to PACOA for the product.
Herbert Geismar, PACOA’s Chief Executive Officer, states that PACOA made no profit and that no money came into the possession of PACOA or was paid by PACOA from this transaction; PACOA was not involved in the transaction other than receiving the invoices and passing them on to Paint Fair Stores for payment since the product, Super Speed Seal, was not carried in PACOA’s warehouse; and PACOA was not a distributor of Super Speed Seal since it never supplied the item to any entity and never received any monies or profit for shipping and/or supplying the items.
Geismar explains that member stores of Paint Fair Stores, in addition to ordering items from the warehouse maintained by PACOA, could call vendors directly and have the items delivered directly from the vendor to the store. This is called a drop-ship order. Member stores previously engaged in drop-ship orders to avoid charges placed on items that PACOA carried in its warehouse. PACOA, in order to prevent stores from getting items without paying its charges, told all suppliers that any drop-ship order to any member of Paint Fair had to be billed to PACOA.
*98 Utilizing this method of billing, PACOA was thereby largely successful in ensuring that "member stores stopped trying to obtain items in the PACOA warehouse directly from suppliers” (Geismar affidavit, Mar. 10, 1997, 21). PACOA explains, however, that for items such as Super Speed Seal that PACOA did not have in its warehouse, it charged nothing extra for the item and passed the invoice directly to Paint Fair Stores for payment. To document the assertion, PACOA produced for the court its entire inventory log for' the relevant time period, establishing that PACOA did not have the Super Speed Seal product in its warehouse.
It is well settled that " ’[distributors of defective products, as well as retailers and manufacturers, are subject to potential strict products liability’ ” (Harrigan v Super Prods., Corp., 237 AD2d 882, 883; Giuffrida v Panasonic Indus. Co., 200 AD2d 713, 715; accord, Pinckney v Zep Mfg. Co., 1997 WL 204903, 9 [ND NY, Apr. 15, 1997, Pooler, J.] [applying New York law]).
Notwithstanding plaintiffs’ above-recited allegations, the court finds that PACOA’s sole involvement in this transaction was a billing or bookkeeping function. The manufacturer of the Super Speed Seal sent the product directly to the retailer. The retailer in this case, Sol Passick, indeed ordered the product directly from the manufacturer. Although possession of an item is not necessary to render a distributor liable in an action for strict products liability (Kirby v Rouselle Corp., 108 Misc 2d 291), PACOA’s conduct in this case does not qualify it as a distributor. Significantly, the court is unaware of any case — and none has been cited on this point — where a party who performed solely a billing function was treated as a distributor and held responsible therefor.
In Blackburn v Johnson Chem. Co. (128 Misc 2d 623 [Sup Ct, Kings County]), the plaintiff commenced a products liability action when a spray can of insecticide exploded. The court granted the motion for summary judgment by the defendant can manufacturer whose role was only to produce the unfilled, uncapped cannister and to print the label. Neither of those actions was the cause of the injury. The court held that the spray can manufacturer’s "conduct with regard to the manufacture and marketing of the product was ministerial and did not rise to a level sufficient to bring it within the class of those who may be held responsible in strict liability” (supra, at 627). At best, PACOA’s conduct in the instant case was likewise ministerial.
*99 Moreover, the fact that PACOA was designated on invoices as the party to be billed is too tangential to the distribution of the product and would not promote any of the public policy purposes of strict products liability (Blackburn v Johnson Chem. Co., supra, at 627).
Also, with regard to the causes of action for breaches of warranty and negligence, plaintiffs have not produced any facts that would render PACOA liable.
Accordingly, PACOA’s motion for summary judgment is granted, and the fourth amended complaint is dismissed as against it.