142 P.3d 1232

**STATE FARM INSURANCE COMPANIES, Plaintiff/Appellant,**

v.

**PREMIER MANUFACTURED SYSTEMS, INC., an Arizona corporation, Defendant/Appellee.**

**No. 1 CA–CV 04–0465.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 29, 2006.

The Sittu Law Firm, PLLC By John D. Sittu, Scottsdale, Attorneys for Plaintiff/Appellant.

Baird, Williams & Greer, L.L.P. By Robert L. Greer, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises out of a strict products liability action. The issue before us is whether the principles of comparative fault established by the state legislature in Arizona Revised Statutes ("A.R.S.") section 12–2506 (2003) are applicable to the participants in the chain of distribution of an allegedly defective product. We hold they are.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The parties have stipulated to the relevant facts. In May 2001, an insured of Plaintiff/Appellant State Farm Insurance Companies returned home from a vacation and discovered that an under-sink reverse osmosis water filtration system had leaked, damaging his home and personal property. The insured had purchased the filtration system one to two years before the leak, and had properly installed and maintained the system. He had not modified or altered the system from its original condition.

¶ 3 The filtration system had been packaged and sold by Defendant/Appellee Premier Manufactured Systems, Inc. The system contained a series of filters inside plastic canisters connected by flexible tubing. Worldwide Distributing, LTD. had manufactured the canisters and sold them to Premier. Because of a design or manufacturing defect, one of the canisters in the system had fractured and caused the leak.

¶ 4 State Farm paid its insured $19,270.86 for the losses caused by the leak, then filed a strict products liability case against Premier and Worldwide (and others not relevant to this appeal) to recover the amount it had paid. Worldwide, by then defunct, failed to answer the complaint, and the court entered a default judgment against it. Premier answered, denied liability, and affirmatively alleged the trier of fact would be required to determine the "relative degree of fault of all parties and other persons." Subsequently, State Farm moved for summary judgment on the issue of comparative fault, asserting all entities in the chain of distribution of a defective product in a strict products liability action are jointly and severally liable to the consumer for all injuries caused by the product. The superior court denied State Farm's motion, holding the comparative fault principles set forth in A.R.S. § 12–2506 applied to strict products liability cases. The court further held that the entities involved in the manufacture, production, and sale of a defec-

tive product to consumers were severally at fault.

¶ 5 As a consequence of the court's ruling, the parties entered into a stipulated judgment and agreed Worldwide was 75% at fault and Premier was 25% at fault and liable to State Farm "only to that extent."[1] The superior court entered judgment against Premier in the amount of $4817.71. State Farm timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 6 On appeal, State Farm asserts Arizona's statutory system of several liability based on comparative fault should not be applied to the members of the chain of distribution in a strict products liability case, and the liability of those in the chain of distribution should be joint and several. Because the "basic tenet" of products liability law is to make the injured consumer whole, State Farm argues all parties in the chain of distribution of a defective product should be jointly and severally liable; otherwise, an injured consumer will be left with little or no remedy if, as in this case, most of the fault is apportioned to an insolvent member of the distribution chain. The arguments raised by State Farm present questions of law, which we review de novo. *Gamez v. Brush Wellman, Inc.*, 201 Ariz. 266, 269, ¶ 4, 34 P.3d 375, 378 (App.2001); *Diaz v. Magma Copper Co.*, 190 Ariz. 544, 547, 950 P.2d 1165, 1168 (App.1997).

### I. Strict Products Liability and Comparative Fault

■ ¶ 7 The doctrine of strict products liability is "a public policy device to spread the risk from one to whom a defective product may be a catastrophe, to those who marketed the product, profit from its sale, and have the know-how to remove its defects before placing it in the chain of distribution." *Tucson Indus., Inc. v. Schwartz*, 108 Ariz. 464, 467–68, 501 P.2d 936, 939–40 (1972).[2] In

---

1. In entering into the stipulated judgment, State Farm preserved its objection to the superior court's comparative fault ruling.

2. The Arizona Supreme Court has adopted the doctrine of strict products liability as set forth in the Restatement (Second) of Torts, § 402A. *O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 559–60, 447

*Caruth v. Mariani,* 11 Ariz.App. 188, 192, 463 P.2d 83, 87 (1970), this court discussed application of the doctrine to those involved in the chain of a defective product's distribution. We explained that strict liability is based on public policy:

> Who should bear the loss? The injured member of the public or those persons who are in the chain of placing defective goods on the market. We choose to protect the member of the public since those involved in the chain of marketing can distribute the risk between themselves by means of insurance and indemnity agreements. They should be better equipped economically to do so than some innocent member of the public. If only one entity in the chain of marketing is subject to liability to the victim, and that one is financially irresponsible, it is no comfort to the victim to know that he has a theoretically valid complaint against one defendant.

¶ 8 Strict products liability does not rest on traditional concepts of fault. *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 292, 640 P.2d 851, 854 (1982). A strict products liability plaintiff does not have to prove the defendant was negligent. *Id.* Liability for a defective product extends to all those involved in its distribution, including manufacturers of component parts, dealers, distributers, or retail sellers. *Id.; Sullivan v. Green Mfg. Co.,* 118 Ariz. 181, 575 P.2d 811 (App.1977). Thus, every member in the distribution chain of a defective product is responsible for the injury to the plaintiff, even if it did not make the product defective or unreasonably dangerous.[3] A manufacturer, seller, or distributor of a defective product is liable even if it "has exercised all possible care in the preparation and sale of [its] product." Restatement (Second) of Torts, § 402A & cmt. f (1965).

¶ 9 Strict products liability initially arose in this state when the common-law

doctrine of joint and several liability was the norm, not the exception. Under this doctrine, if two or more actors together cause an injury to the victim, each is liable for the full amount of the victim's injuries. *Herstam v. Deloitte & Touche, LLP,* 186 Ariz. 110, 114, 919 P.2d 1381, 1385 (App.1996). Thus, under this doctrine, an "innocent" seller, who had done nothing to make the product defective or unreasonably dangerous, could be held liable for the full amount of the plaintiff's injuries. However, under the common law the innocent seller could seek indemnity from the manufacturer who had created the defect. *Sequoia Mfg. Co. v. Halec Construct. Co., Inc.,* 117 Ariz. 11, 20, 570 P.2d 782, 791 (App.1977) (lessor of defective product); *Allison Steel Mfg. Co. v. Superior Court,* 20 Ariz.App. 185, 190, 511 P.2d 198, 203 (1973) (absent its own active participation in creation of defect causing injury, retailer may seek indemnity from manufacturer).[4]

¶ 10 In 1984, the legislature enacted the Uniform Contribution Among Tortfeasors Act ("UCATA"). 1984 Ariz. Sess. Laws, ch. 237, § 1. UCATA replaced contributory negligence with comparative fault and abolished the rule forbidding contribution between joint tortfeasors.

> Under this new regime, the factfinder allocated a percentage of fault to each culpable actor. Even though the culpable defendants were still jointly and severally liable for all damages, the legislature established a right of contribution that allowed a defendant held liable for more than his share of fault to recover from the other tortfeasors in proportion to their several contributions of fault.

*Piner v. Superior Court,* 192 Ariz. 182, 187, ¶ 21, 962 P.2d 909, 914 (1998).

¶ 11 "This change was intended to bring about a system in which each tortfeasor would eventually contribute only a portion of damage equal to the percentage of fault attributed to that tortfeasor by the fact finder." *Id.* Even under this new system, Arizona

---

P.2d 248, 251–52 (1968); *Reader v. Gen. Motors Corp.,* 107 Ariz. 149, 483 P.2d 1388 (1971).

**3.** However, if a defect is not attributable to the design or manufacture of the product and arose after the product left the manufacturer's control, then only the seller is strictly liable. *Bridgestone/Firestone N. America Tire, L.L.C. v. A.P.S.*

*Rent–A–Car & Leasing, Inc.,* 207 Ariz. 502, 513, ¶ 43, 88 P.3d 572, 583 (App.2004) (citing authorities).

**4.** The legislature has enacted a series of statutes regarding product liability actions. These statutes provide for indemnification between manufacturer and seller. *See infra* ¶ 24.

negligence law still produced harsh results when one defendant was insolvent, thus leaving the other defendants unable to obtain contribution.

¶ 12 In response, in 1987 the legislature amended UCATA, and except in certain situations, abolished joint and several liability and replaced it with a system of several liability based on comparative fault. Section 12–2506(A) states that "[i]n an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint" and "[e]ach defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault . . . ." In assessing "percentages of fault," the trier of fact is required to consider the "fault" of plaintiffs, defendants, and nonparties; that is, "all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party" in the case. A.R.S. § 12–2506(B).

¶ 13 UCATA's "general goal" is to make each tortfeasor responsible for only its share of fault. *Jimenez v. Sears, Roebuck & Co.,* 183 Ariz. 399, 404, 904 P.2d 861, 866 (1995). Consistent with this goal, the statutory definition of fault is as follows:

"Fault" means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product.

A.R.S. § 12–2506(F)(2).

## II. Comparative Fault in the Chain of Distribution

¶ 14 Because the doctrine of strict products liability does not rest on traditional no-

tions of fault, at least conceptually, the doctrine does not mesh very well in a system designed to apportion fault.[5] This conceptual difficulty gives rise to State Farm's argument that when a plaintiff's injuries are caused by a defective product and the *only* parties at "fault" are in the chain of distribution, those parties should be jointly and severally liable for the plaintiff's damages. To hold otherwise, State Farm argues, would undermine the policy reasons behind the doctrine of strict products liability.

¶ 15 Although State Farm's argument has some pragmatic appeal, we must reject it. The legislature has abolished joint and several liability except in certain situations, none of which are applicable here. Section 12–2506 could not be any clearer. *See* A.R.S. § 12–2506(A) ("in an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section."); A.R.S. § 12–2506(B) (in assessing percentages of fault, the trier of fact shall consider "the fault of all persons who contributed to the alleged injury, death or damage to property . . . ."); A.R.S. § 12–2506(C) ("The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and nonparties, shall be determined and apportioned as a whole at one time by the trier of fact."); A.R.S. § 12–2506(D) ("[t]he liability of each defendant is several only and is not joint," except as specified).

¶ 16 Further, State Farm's argument— that the parties in the chain of distribution must be treated essentially as a single unit for allocation of fault—conflicts with the legislature's directive that all types of fault, including strict liability and products liability, must be compared. *See supra* ¶ 13. In our view, the plain language of A.R.S. § 12–2506 requires the fault of all members of the

---

5. Other courts and commentators have noted the difficulties of inserting a faultless liability system into a fault allocation system. *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 455 n. 5 (10th Cir.1982) (discussing Kansas law); *Daly v. Gen. Motors Corp.,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162, 1167–72 (1978); *Wimberly v.*

*Derby Cycle Corp.,* 56 Cal.App.4th 618, 65 Cal. Rptr.2d 532 (1997); Ann Larimer Robertson, *When Worlds Collide, Strict Liability and Comparative Fault,* 38 Ariz. Attorney 38, 38 (2002); Ron Kilgard, *Cleaning up After Multiple Tortfeasors: Part Three: The Liability of Multiple Tortfeasors to Each Other,* 35 Ariz. Attorney 38, 41 (1999).

distribution chain to be compared and allocated. *Calik v. Kongable,* 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055, 1057 (1999) (with only a few exceptions, "if the language [of a statute] is clear and unambiguous, we apply it without using other means of statutory construction").

¶ 17 In *Jimenez,* our supreme court applied comparative-fault principles in a strict products liability action. The court held that the trier of fact, when allocating causal responsibility in a strict products liability claim, must make a factual determination as to the relative degree of fault of the plaintiff's misuse. 183 Ariz. at 405, 904 P.2d at 867. The court did not, we acknowledge, address the issue presented here: whether UCATA requires fault to be apportioned between or among entities in the chain of distribution of an allegedly defective product. Nevertheless, the supreme court's application of comparative fault principles in a strict products liability case further persuades us that fault must be allocated to the participants in the chain of distribution of an allegedly defective product. Application of comparative fault principles may adversely affect a plaintiff's recovery. But, as the supreme court recognized in *Jimenez,* 183 Ariz. at 407, 904 P.2d at 869, and as this court has also recognized, in light of the legislature's clear directive, fault is apportioned even when at the expense of the plaintiff. *Rosner v. Denim & Diamonds, Inc.,* 188 Ariz. 431, 433, 937 P.2d 353, 355 (App.1996).

¶ 18 State Farm nevertheless argues that despite the plain language of the statute, the legislature intended to abolish only joint liability in situations in which the negligence of more than one tortfeasor "coalesced" to cause the plaintiff's injury. In making this argument, State Farm principally relies on the supreme court's decision in *Wiggs v. City of Phoenix,* 198 Ariz. 367, 10 P.3d 625 (2000).

¶ 19 In *Wiggs,* the court held the Arizona rule that makes an employer vicariously liable for the negligence of an independent contractor performing a non-delegable duty of the employer was unaffected by A.R.S. § 12–2506 and, indeed, was consistent with the express language of A.R.S. § 12–2506(D). That section states that "a party is responsible for the fault of another person ... if [t]he other person was acting as an agent or servant of the party." In so holding, the court stated:

> Joint liability and vicarious liability are related but separate doctrines. The joint liability that was abolished by A.R.S. § 12–2506(D) was limited to that class of joint tortfeasors whose independent negligence coalesced to form a single injury. In contrast to those whose liability was vicarious only, each was personally at fault to some degree, though each was wholly liable for full damages. Section 12–2506 changed that.

198 Ariz. at 371, ¶ 13, 10 P.3d at 629.

¶ 20 State Farm contends this language supports its argument the legislature abolished joint and several liability only when there are independently acting tortfeasors who are at fault in the traditional sense. We disagree. The supreme court's language must be read in context. The issue before the court was whether fault should be allocated when there is vicarious liability. The court was not addressing the issue presented here—whether comparative fault applies to the participants in the chain of distribution of an allegedly defective product.

¶ 21 To be fair, we recognize the justification for imposing vicarious liability parallels the justification for imposing liability on a non-negligent member of the chain of distribution of a defective product. *See W. Page Keeton et. al.,* Prosser & Keeton On Torts § 69 (5th ed.1984) (footnote omitted) ("What has emerged as a modern justification of vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon the enterprise itself, as a required cost of doing business."). Nevertheless, despite the similar justifications, the legislature has adopted a system of comparative fault in which the relative degrees of fault of the claimant, all defendants, and nonparties are to be determined and apportioned by the finder of fact. A.R.S. § 12–2506(B). And, the legislature has defined fault broadly, and included within the definition of fault products liability and

strict liability claims. A.R.S. § 12–2506(F)(2).

¶ 22 State Farm argues the policy behind the doctrine of strict products liability (injuries caused by a defective product should be the responsibility of those who market it) will be undercut through application of comparative fault because an "innocent" seller, who did nothing to make the product defective but simply "facilitated the product reaching the consumer" will never end up with any assessment of fault. We disagree. Under Arizona's comparative fault system, the fact finder must assess "degrees of fault," not degrees of causation.[6] It may be, as is the case here, that the "innocent" seller's role in causing or contributing to the claimant's injury will be far less than the manufacturer who designed and made the defective product.[7] But it is for the finder of fact to examine and assess the differing conduct, roles, duties, and responsibilities played by all of the participants in the distribution chain of an allegedly defective product and to decide, based on these and other relevant considerations, the degree of fault to allocate to the members of the chain.[8] Indeed, although State Farm asserts Premier was fault-free, State Farm nevertheless agreed to allocate 25% of the fault to Premier.

**6.** Section 12–2506 allocates fault, not causation: Although causation (or physical contribution to the injury) is a necessary condition precedent to consideration of a person's fault—i.e., the fault must have "proximately caus[ed] or contribut[ed]" to the claimant's injuries to be considered, A.R.S. § 12–2506(F)(2)—once causation is found the trier of fact must determine and apportion "the relative degrees of fault" of all parties and nonparties. *Zuern v. Ford Motor Co.*, 188 Ariz. 486, 491–92, 937 P.2d 676, 681–82 (App.1996) (quoting A.R.S. § 12–2506(C))(alterations in original).

**7.** For example, even if the "innocent" seller did not cause the product to be defective, fault could still be attributed to such a seller if the seller failed to warn of a defect discoverable by inspection. *See Bridgestone/Firestone N. America Tire, L.L.C. v. A.P.S. Rent–A–Car Leasing, Inc.*, 207 Ariz. 502, 515, ¶ 57, 88 P.3d 572, 585 (App.2004).

**8.** State Farm asserts that the reference to "products liability and misuse, modification or abuse of a product" in A.R.S. § 12–2506(F)(2) simply requires the comparison of fault in a products

¶ 23 We agree with the supreme court's observation that

jurors are capable of evaluating degrees of fault, and the statute reflects our legislature's agreement. As the court of appeals has observed: "We believe that a jury . . . will be able to understand the duties involved in situations similar to this case, and will be able to equitably apportion fault according to those duties and the facts presented in the particular case."

*Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55, ¶ 21, 961 P.2d 449, 453 (1998) (quoting *Natseway v. City of Tempe*, 184 Ariz. 374, 378, 909 P.2d 441, 445 (App.1995)) (alterations in original).

¶ 24 Allowing fault to be assessed against the participants in the chain of distribution of a defective product does not render the indemnification rights between sellers and manufacturers created by A.R.S. § 12–684 (2003) superfluous,[9] as State Farm also argues. A seller or manufacturer may be entitled to indemnification under that statute but still be allocated fault by the finder of fact based on its own conduct. Such a situation was presented in *Bridgestone/Firestone N. America Tire., L.L.C. v. A.P.S. Rent–A–Car & Leasing, Inc.*, 207 Ariz. 502, 88 P.3d 572 (App.2004).

liability case to that between the consumer and the entities in the chain of distribution. The language of the statute simply does not support State Farm's construction.

**9.** Under A.R.S. § 12–684(A), a manufacturer who refuses to accept a tender of defense from the seller in a products liability action is required to indemnify the seller unless the seller had knowledge of the defect in the product or the seller "altered, modified or installed the product, and such alteration, modification or installation was a substantial cause of the incident giving rise to the action, was not authorized or requested by the manufacturer and was not performed in compliance with the instructions or specifications of the manufacturer." Under A.R.S. § 12–684(C), a seller is required to indemnify the manufacturer of the product "if the seller provided the plans or specifications for the manufacture or preparation of the product and such plans or specifications were a substantial cause of the product's alleged defect and if the product was manufactured in compliance with and according to the plans or specifications of the seller."

¶ 25 There, the plaintiffs in an underlying products liability action sued a car rental company for negligence and for strict products liability arising out of a van roll-over caused by a tire failure. *Id.* at 503, ¶ 1, 88 P.3d at 573. The rental company admitted the tire was defective and unreasonably dangerous and the superior court directed a verdict in the plaintiffs' favor on the strict products liability claim. *Id.* at 504, ¶ 5, 88 P.3d at 574. The jury awarded substantial damages to the plaintiffs and essentially allocated 70% of the verdict to the rental company based on the rental company's negligence and 30% on the product-liability claim.[10] *Id.* at ¶ 6, 88 P.3d at 574. Subsequently, the rental company sued the manufacturer for indemnity under A.R.S. § 12–684(A). *Id.* at 504–05, ¶¶ 8, 9, 88 P.3d at 574–75. This court held the rental company was entitled to indemnification under the statute for the 30% allocated by the jury on the strict products liability claim. *Id.* at 505, ¶ 9, 88 P.3d at 575.

¶ 26 Finally, allowing fault to be allocated against the participants in a defective product's chain of distribution does not place additional legal proof requirements on a strict products liability plaintiff. To establish a prima facie case of strict products liability, the plaintiff must show the product was in a defective condition that made it unreasonably dangerous, the defective condition existed when the product left the defendant's control, and the defective condition proximately caused the plaintiff's injuries. *Jimenez,* 183 Ariz. at 402, 904 P.2d at 864. When a plaintiff "establishes that he purchased a defective product that has gone through several hands before purchase, the burden shifts to the defendants to negate their responsibility." *Mineer v. Atlas Tire Co.,* 167 Ariz. 315, 317, 806 P.2d 904, 906 (App.1990); *see also Bridgestone,* 207 Ariz. at 510, ¶ 30, 88 P.3d at 580. Nevertheless, as a practical matter, we recognize that although not part of its prima facie case, to maximize its recovery, a plaintiff will be motivated to show that a solvent member of the distribu-

tion chain is more at fault than an insolvent participant. A plaintiff is presented with essentially the same situation, however, when a strict products liability defendant asserts the plaintiff contributed to the injury and must be assigned fault.

### III. Constitutionality

¶ 27 State Farm also argues that Article 18, Section 6 of the Arizona Constitution prohibits application of comparative fault to participants in the chain of distribution of a defective product. Article 18, Section 6 of the Arizona Constitution provides: "the right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

¶ 28 Allocation of fault to Premier did not deprive State Farm of its strict products liability right of action. Indeed, it sued and recovered on that claim. Further, as our supreme court has recognized, "instituting a several-only system of liability ... essentially regulates responsibility for cause rather than limits the damages recoverable." *Jimenez,* 183 Ariz. at 407, 904 P.2d at 869. Allocation of fault within the chain of distribution does not violate the Arizona Constitution.

### CONCLUSION

¶ 29 For the foregoing reasons, we affirm the superior court's judgment allocating fault and damages between Premier and Worldwide.

CONCURRING: JAMES B. SULT, Presiding Judge and PATRICIA A. OROZCO, Judge.

---

10. The plaintiffs' negligence claim against the rental company, and the 70% of fault allocated by the jury on that claim, arose from the rental company's failure to inspect the tire, or to warn the renters of a prior accident involving a virtual-

ly identical tire on the same vehicle, or to replace the other tires after the prior accident. *Bridgestone,* 207 Ariz. at 504 n. 3, ¶ 6, 88 P.3d at 574 n. 3.