IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY −4 2012

COURT OF APPEALS

|  |  |  |
|---|---|---|
| BRIZA GRUBB, individually and as surviving spouse of Michael Grubb; BRIZA GRUBB for and on behalf of her minor children, ALEXANDRO GRUBB and EMILY GRUBB; BRIZA GRUBB as Personal Representative of the Estate of Michael Grubb, | ) ) ) ) ) ) ) ) | 2 CA-CV 2011-0140 DEPARTMENT A  O P I N I O N |
| Plaintiffs/Appellants, | ) ) ) |  |
| v. | ) ) |  |
| DO IT BEST CORPORATION, an Indiana corporation, | ) ) ) ) |  |
| Defendant/Appellee. | ) ) |  |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause Nos. CV200800099 and CV200800450

Honorable Charles A. Irwin, Judge

AFFIRMED

---

Penilla Metzger, PLLC
  By Nathan T. Metzger and Perry E. Casazza                                     Phoenix
                                                      Attorneys for Plaintiffs/Appellants


Lewis Brisbois Bisgaard & Smith, LLP
  By James K. Kloss and Felice F. Guerrieri                                     Phoenix
                                                      Attorneys for Defendant/Appellee

---

H O W A R D, Chief Judge.

¶1        Appellant Briza Grubb[1] appeals from the trial court's grant of summary judgment in favor of appellee Do It Best Corporation (DIB) in a wrongful death action, arising from the death of Michael Grubb from injuries caused by a propane gas space heater.  On appeal, Grubb contends the court erred by finding no issue of material fact on her product liability and negligence claims.  Because the court correctly applied the law, we affirm.

**Factual and Procedural Background**

¶2        "We view the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom [summary] judgment was entered." *Mousa v. Saba*, 222 Ariz. 581, ¶ 15, 218 P.3d 1038, 1042 (App. 2009).  Michael Grubb was seriously injured in an explosion while trying to install a space heater.  He later died from his injuries.  Grubb sued various parties including several DESA corporations (DESA) as manufacturer of the heater, B & D Lumber and Hardware (B & D) as seller of the heater, and DIB as "the seller and/or wholesaler" of the heater.  The trial court granted DIB's motion to file a cross-claim against DESA.  DIB moved for summary judgment on its claims for indemnity and declaratory relief against DESA, which the court granted.  DIB then moved for summary judgment as to Grubb's claims.  After a hearing, the court granted summary judgment in favor of DIB.  Following further

---

[1]Briza Grubb appeals as the surviving spouse of Michael Grubb, on behalf of her minor children, and as personal representative of Michael Grubb's estate.  For clarity, we refer to her as Grubb.

2

motions and a hearing, the court entered judgment in favor of DIB pursuant to Rule 54(b), Ariz. R. Civ. P.  This appeal followed.

## Standard of Review

¶3　　　Grubb contends the trial court erred in granting summary judgment on both her product liability and negligence claims.  "On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law."  *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998) (emphasis omitted).  Summary judgment is required where "there is no genuine issue as to any material fact."  Ariz. R. Civ. P. 56(c)(1).  Our supreme court has interpreted this rule to mean that, "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense," summary judgment should be granted.  *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).  We will affirm the trial court's grant of summary judgment if it is correct for any reason.  *Hawkins v. State*, 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App. 1995).

## Product Liability

¶4　　　Grubb argues the trial court erred in granting summary judgment in favor of DIB on her product liability claim.  She contends that because DIB was part of the chain of distribution "controlling Arizona case law . . . mandates that DIB is, at least in some degree, at fault."

3

¶5        Subject to statutory exceptions not relevant here, *see* A.R.S. § 12-681,

sellers may be held strictly liable for harm caused by defective and unreasonably

dangerous products they have sold, *Antone v. Greater Ariz. Auto Auction*, 214 Ariz. 550,

¶ 11, 155 P.3d 1074, 1076 (App. 2007).  Section 12-681(9), for purposes of that article,

defines a seller as "a person or entity, including wholesaler, distributor, retailer or lessor,

that is engaged in the business of leasing any product or selling any product for resale,

use or consumption."   Although Arizona courts have defined seller broadly, in

accordance with the policies underlying strict liability, they have excluded from liability

entities which do not participate significantly in the stream of commerce and do not have

"'the right to control the incidents of manufacture or distribution.'"  *Antone*, 214 Ariz.

550, ¶¶ 12, 33, 155 P.3d at 1076-77, 1080, *quoting Torres v. Goodyear Tire & Rubber

Co.*, 163 Ariz. 88, 96, 786 P.2d 939, 947 (1990).  And the Restatement (Third) of Torts:

Product Liability § 20 cmt. g (1998), notes that "product distribution facilitators" such as

parties who advertise or finance products, are not strictly liable.[2]  *See Powers v. Taser

Int'l, Inc.*, 217 Ariz. 398, ¶ 19, 174 P.3d 777, 781-82 (App. 2007) (Arizona courts follow

Restatement "[a]bsent controlling Arizona law to the contrary").

¶6        In *Antone*, we considered whether a commercial auctioneer was subject to

strict liability as a seller.  214 Ariz. 550, ¶¶ 8, 13, 155 P.3d at 1075, 1077.  We concluded

the auctioneer did not participate significantly in the stream of commerce because it

---

[2]The Restatement also limits the definition of "sells" to the transfer of ownership. Restatement § 20(a).  Because Arizona has defined "seller" more broadly by statute and common law, *see* A.R.S. §§ 12-681(9), 12-682, we will not follow this portion of the Restatement, *see Powers v. Taser Int'l, Inc.*, 217 Ariz. 398, ¶ 19, 174 P.3d 777, 781-82 (App. 2007).

merely provided a service to other parties in the stream of commerce. *Id.* ¶¶ 26, 33. We considered the fact that the auctioneer's fees did not depend on the condition of the product or its selling price and mostly were used to pay operating costs. *Id.* ¶ 26. We also noted that, although the auctioneer may have had temporary physical possession, it never owned or inspected the product, or provided a warranty as to the product's condition. *Id.* ¶ 27. Finally, the auctioneer had "no special relationship" or continuing contact with a manufacturer which would permit it to affect the safety of the product. *Id.* ¶ 28.

**¶7** Similarly, in *Dillard Department Stores, Inc. v. Associated Merchandising Corp.*, 162 Ariz. 294, 296, 782 P.2d 1187, 1189 (App. 1989), the appellant argued a product broker was strictly liable for a defective product because the broker was in the chain of distribution. This court considered various factors, including that the broker: never owned or possessed the product; never exercised control over the product; "provide[d] a service to retailers, rather than specific goods to the public"; did not directly benefit from the transaction at issue; would not have been responsible for a product lost or damaged in transit; and did not create consumer reliance in the product. *Dillard Dep't Stores*, 162 Ariz. at 298, 782 P.2d at 1191. We concluded the broker lacked the "'participatory connection'" required to give rise to strict liability as a seller. *Id.*

**¶8** Additionally, in *Joseph v. Yenkin Majestic Paint Corp.*, 661 N.Y.S.2d 728, 730 (N.Y. Sup. Ct. 1997), *affirmed in part by* 690 N.Y.S.2d 611 (N.Y. App. Div. 1999), the New York court considered a product liability case with facts similar to this situation.

The defective product had been delivered via a "drop-ship order." *Joseph*, 661 N.Y.S.2d at 730. Member stores of a paint organization could order items from the defendant's warehouse or, if the item was not stocked in the warehouse, could order directly from the vendors, in a drop-ship order. *Id.* When a member store ordered directly from the vendor, the vendor would bill the defendant who, in turn, would pass the invoice to the member store. *Id.* The defendant did not profit from a drop-ship order. *Id.* The court held the defendant's conduct was ministerial and "the fact that [the defendant] was designated on invoices as the party to be billed is too tangential to the distribution of the product." *Id.* at 731.

¶9            DIB is a cooperative of hardware stores and B & D is a member of the cooperative. DIB negotiates prices with vendors on behalf of member stores and then permits member stores to purchase products from DIB's warehouses or to order products directly from vendors in a drop-ship order. DIB retains a small fee from every item sold directly from the vendor to the member store, however most of the fee is rebated to member stores or covers the cost of billing. In this case, B & D placed an order directly with DESA for the heater. DESA confirmed with DIB that it would guarantee payment, and then DESA shipped the heater directly to B & D. The invoice from DESA to DIB states it was "sold to" B & D and to "bill to" DIB. DIB later billed B & D for items purchased from various manufacturers, including the heater.

¶10           DESA was a vendor with DIB for thirty or forty years. However, at the time of the drop-ship order, DESA was "one of several [vendors of] gas wall heaters . . . made available" to DIB members. And although Grubb presented evidence that DIB

6

could decide to stop carrying a vendor's products, she has not cited to any evidence that DIB had the ability to alter DESA's product design or packaging. Moreover, a manager for B & D testified that nobody in the area was familiar with the name DIB, but instead people still refer to B & D by a name resulting from its former association with a different organization.

**¶11** We conclude DIB did not participate significantly in the stream of commerce as to this particular heater. DIB never owned or possessed the heater.[3] As in *Joseph*, B & D ordered the heater directly from DESA and DESA shipped it directly to B & D. *See* 661 N.Y.S.2d at 730. Similarly, the invoice sets forth that the heater was "sold to" B & D and merely lists DIB as the party to bill. Grubb has not pointed to any evidence that DIB provided a warranty for the heater or would have been responsible if it had been lost or damaged in transit. *See Dillard Dep't Stores*, 162 Ariz. at 298, 782 P.2d at 1191. DIB provided a service to B & D by permitting it to order from DESA as a DIB member and by collecting B & D's bills into a single invoice. *See Dillard Dep't Stores, Inc.*, 162 Ariz. at 298, 782 P.2d at 1191. Despite the fact that DIB collected a fee for the sale, it remitted the majority of such fees and utilized most of the remainder to cover billing costs. *See Antone*, 214 Ariz. 550, ¶ 26, 155 P.3d at 1079. Paying the bill put DIB in the position of financing the purchase, but did not make it liable under a product

---

[3]Grubb argues without citation that "a distributor acquires a right to title ownership of the product" and "[u]nder normal circumstances, a distributor purchases a product from a manufacturer, then sells that product to another distributor or retailer." However, she provides no legal or factual support for this proposition in her briefs. Grubb did provide authority for this proposition at oral argument but also conceded she was aware of no Arizona case in which such factors caused a party to be found liable in a product liability action.

liability theory. And although DIB had carried DESA products for thirty or forty years, it also carried heaters by other manufacturers and no evidence indicates DIB had a special relationship with DESA which would permit DIB to alter or influence DESA's design. Finally, no evidence indicates that there is consumer reliance on any involvement by DIB. Thus, we conclude DIB did not participate significantly in the stream of commerce for this particular heater, *see id.* ¶ 33, and that any participation was too tangential to the heater's distribution to merit imposing product liability upon DIB, *see Joseph*, 661 N.Y.S.2d at 731.

¶12 Grubb assumes without support that DIB was part of the chain of distribution and concludes it must be liable based on *State Farm Insurance Cos. v. Premier Manufactured Systems, Inc.*, 217 Ariz. 222, 172 P.3d 410 (2007), and *State Farm Insurance Cos. v. Premier Manufactured Systems*, 213 Ariz. 419, 142 P.3d 1232 (App. 2006). However, in the *State Farm* cases, this court and our supreme court considered whether defendants in strict product liability actions may be held liable jointly and severally or only severally. *State Farm Ins. Cos.*, 217 Ariz. 222, ¶ 1, 172 P.3d at 412; *State Farm Ins. Cos.*, 213 Ariz. 419, ¶ 6, 142 P.3d at 1234. Neither case considered whether a defendant had the requisite participatory connection to be strictly liable. *State Farm Ins. Cos.*, 217 Ariz. 222, 172 P.3d 410; *State Farm Ins. Cos.*, 213 Ariz. 419, 142 P.3d 1232. Thus, those cases are inapposite. Grubb's reliance on Arizona's comparative fault statute is similarly misplaced. *See* A.R.S. § 12-2506.

¶13 Grubb also refers to the trial court's grant of indemnity from DESA to DIB and contends without support that if DIB "were not a 'seller' . . . it would not be entitled

8

to indemnity from DESA." However, the court concluded only that if DIB were found to be liable it would be as a seller and that DESA was required to indemnify DIB both under Arizona law and contractually. It did not conclude that DIB was liable as a seller in the stream of commerce.

¶14        Grubb finally argues without citation to case law that DIB "was no mere broker or auctioneer" because it advertised the heater for sale in its catalog. But, advertising the heater makes DIB only a "product distribution facilitator" which would not make it strictly liable. *See* Restatement § 20 cmt. g. And it is undisputed that B & D did not order the heater through DIB's catalog but instead placed the order directly with DESA. Thus, the heater's appearance in the catalogue is irrelevant to DIB's participation in the stream of commerce for this particular heater.

**Negligence**

¶15        Grubb further argues the trial court erred in granting DIB summary judgment on Grubb's negligence claim. She claims she had shown negligence because DIB failed to inspect the heater's packaging and the packaging would not have passed DIB's own standards. She further asserts DIB was "an admitted seller" of the heater and had a duty to her. In her discussion of her negligence claim, Grubb cites only *Gipson v. Kasey*, 214 Ariz. 141, 150 P.3d 228 (2007). That case establishes only the general proposition that, in a negligence action, the plaintiff has the burden of proving four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the

9

defendant's conduct and the resulting injury; and (4) actual damages." *Gipson*, 214 Ariz. 141, ¶ 9, 150 P.3d at 230.

**¶16** We assume DIB could have had some duty to Grubb in these circumstances. *Ontiveros v. Borak*, 136 Ariz. 500, 509, 667 P.2d 200, 209 (1983) ("'every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others'"), *quoting Nazareno v. Urie*, 638 P.2d 671, 674 (1981). But Grubb has failed to cite to any facts in the record that would establish the standard of care DIB, as a member cooperative, had a duty to meet. Despite Grubb's claim to the contrary, as we have concluded above, DIB was not a seller of this particular heater. And Grubb also cites no facts in the record to show that DIB breached any duty it may have had to Grubb. Accordingly, Grubb has waived these issues and we will not address the merits of her claims regarding standard of care and breach of duty. *See* Ariz. R. Civ. App. P. 13(a)(6) (appellant's brief must contain "citations to the . . . parts of the record relied upon"); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 394 n.2 (App. 2007) (issue waived when no citations to relevant supporting authority and argument only mentioned in passing in opening brief). Additionally, although Grubb argues the trial court's conclusions necessarily establish a genuine issue of material fact, Grubb has mischaracterized both the court's rulings and the factual basis. Because Grubb has waived this argument on appeal, we affirm the court's grant of DIB's motion for summary judgment on the issue of negligence.

**Attorney Fees**

¶17        DIB requests attorney fees pursuant to Rule 21(c), Ariz. R. Civ. App. P. However, we will not award attorney fees when a party "has failed to separately articulate an appropriate statutory basis for that request." *Fidelity Nat'l Title Co. v. Town of Marana*, 220 Ariz. 247, ¶ 17, 204 P.3d 1096, 1100 (App. 2009). Because DIB has not articulated a basis for the award, we deny its request.

**Conclusion**

¶18        For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of DIB.

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge