NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ERNEST V., CARYLEE W., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.V., A.V., *Appellees.*

No. 1 CA-JV 21-0277
FILED 5-5-2022

Appeal from the Superior Court in Mohave County
No. S8015JD202000078
The Honorable Megan A. McCoy, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Your AZ Lawyer, Phoenix
By Robert Ian Casey
*Counsel for Appellant Ernest V.*

Harris & Winger, P.C., Flagstaff
By Alex R. Rubel
*Counsel for Appellant Carylee W.*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellees*

_____

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

_____

**C R U Z**, Judge:

¶1 Ernest V. ("Father") and Carylee W. ("Mother") appeal the superior court's order terminating their parental rights to their two children. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In August 2020, the Department of Child Safety ("DCS") took custody of the parents' children, then nine and eleven years old, because police found drugs and paraphernalia throughout their home. Although both parents are prohibited from legally possessing firearms, police also found two loaded, unsecured handguns in the home. Mother identified one of the guns as hers; police found the second gun in Father's brother's closet. The drugs, paraphernalia, and guns were accessible to the children. Police charged the parents with various offenses related to the unlawful possession of drugs and weapons.

¶3 DCS found the home was full of garbage, debris, broken glass, and knives. Mother admitted she had recently used methamphetamine but denied the children had access to any drugs. However, the older child's hair tested positive for methamphetamine. DCS took custody of the children and petitioned for a dependency. The court found the children dependent as to both parents in October 2020 when they did not contest the dependency allegations.

¶4 The parents received substance-abuse testing and treatment, individual counseling, and a parent aide with visitation. For the first five months, Mother engaged in services and completed an intensive outpatient substance-abuse treatment program. The following month, however, she relapsed on methamphetamine and stopped drug testing. Soon afterwards, Mother was convicted of child endangerment based on the events surrounding the August 2020 investigation, and the court sentenced her to eighteen months in prison. Father refused to participate in all services, except visitation.

¶5        Ten months after petitioning for a dependency, DCS moved to terminate the parents' rights based on neglect and substance-abuse grounds, with an additional ground of nature-of-felony for Mother and nine months out-of-home placement for Father. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (B)(3), (B)(4), (B)(8)(a). Father then completed two classes, one for substance abuse and one for parenting. Two months later, the superior court held a termination adjudication hearing and terminated the parents' parental rights under the alleged grounds. The parents appealed. This court has jurisdiction pursuant to A.R.S. § 8-235(A).

## DISCUSSION

¶6        This court reviews constitutional issues de novo, *Lisa K. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 173, 177, ¶ 9 (App. 2012), but "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). "[T]his court will not reweigh the evidence, but will look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶7        The rights of parents to custody and control of their own children, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Severance of a parental relationship may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005) (citation omitted). The court must also find that severance is in the child's best interests by a preponderance of the evidence. *Id.* at 285, ¶ 25.

¶8        Father first argues that because Arizona public policy favors the constitutional right to bear arms, the superior court erred when it considered the presence of loaded firearms in the parents' home while terminating Father's parental rights. To assert a constitutional challenge, an individual must have suffered "some threatened or actual injury resulting from the putatively illegal action." *State v. B Bar Enterprises, Inc.*, 133 Ariz. 99, 101 n.2 (1982) (quoting *State v. Herrera*, 121 Ariz. 12, 15 (1978)). Although Arizona citizens generally have a right to keep and bear arms, U.S. Const. Amend II, Ariz. Const. Amend. 14, citizens with felony convictions are prohibited from possessing a firearm. A.R.S. § 13-3101(A)(7)(b). Father concedes this and therefore has not shown he suffered either a threatened or an actual injury in this case.

¶9 Father nonetheless suggests the court's action infringed on his brother's right to bear arms because one of the firearms belonged to him. A party may raise a constitutional right for a third person only if the party has "a substantial relationship to the third person, the third person [is] unable to assert the constitutional right on his or her own behalf, and the failure to grant the party standing must result in a dilution of the third person's constitutional rights." *B Bar Enterprises, Inc.*, 133 Ariz. at 101 n.2. There is no evidence Father's brother is unable to assert his own constitutional rights or that the court's action infringed on his personal right to bear arms. Regardless, Father overlooks the court's purpose in considering the firearms. The court's focus was not on the adult's mere possession of the guns, but rather the danger they posed to the children from being loaded, unsecured, and within their reach. Accordingly, Father's argument fails.

¶10 Next, Father asserts the superior court's best-interests findings were too formulaic and conclusory to meet constitutional requirements.

¶11 To comport with due process, the superior court's termination order must be written, signed, and set forth supportive findings of fact for both the termination grounds and the best-interests determination. A.R.S. § 8-538(A); Ariz. R.P. Juv. Ct. 66(F)(2)(a); *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 535, ¶ 1 (App. 2018).

¶12 At a minimum, the superior court must "specify at least one factual finding sufficient to support each of [its] conclusions of law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 22 (App. 2012). The purpose behind the requirement "is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law." *Id.* at 240, ¶ 24.

¶13 Here, the superior court found severance "would benefit the children because it would further the plan of adoption, which would provide the children with permanency and stability." The court also found that although the "children are not currently in an adoptive placement," they "are considered adoptable[,] and DCS is making efforts to locate an adoptive placement." Although the findings are general, they establish how the children would benefit from severance. Moreover, the parents' failure to engage in the case plan or make any behavioral changes rendered the best-interests inquiry simple and straightforward by amplifying the children's need for a home free of drug abuse and neglect. The court's summarized findings are therefore sufficient to allow appellate review and do not require more detail to comport with due process. *Ruben M.*, 230 Ariz.

at 241, ¶¶ 25-27 ("When a question of law is complicated, the level of detail required for proper review is necessarily greater[,]" but where the "grounds for the court's judgment are simple and straightforward . . . more summary findings are sufficient.").

¶14            Both parents argue insufficient evidence supports the court's best-interests determination. The parents argue the children are only "theoretical[ly] adoptab[le]" because there was no evidence that their adoption was likely to occur.

¶15            In addition to finding a statutory ground for termination, the superior court must also determine what is in the best interests of the child by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

¶16            First, Mother cites *Titus S. v. Department of Child Safety* in which the court stated that "[w]hen a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and *likely*, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." 244 Ariz. 365, 370-71, ¶ 22 (App. 2018) (citation omitted). In that case, the court found the children's adoption was unlikely because their consent was statutorily required, and they "persistent[ly] oppos[ed] adoption." *Id.* at 371, ¶¶ 22-24. Here, however, only the older child's consent was statutorily necessary to complete an adoption. A.R.S. § 8-106(A)(3). Although DCS did not provide evidence of that child's position, there is no evidence that either of the children opposed a future adoption.

¶17            Moreover, the parents essentially argue that because DCS had not yet identified an adoptable home for the children, any future adoption created only a theoretical benefit. This court, however, has already held that DCS "need not show that it has a specific adoption plan before

terminating a parent's rights." *In re Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Indeed, a court may find that a child would benefit from termination if there is an adoption plan or if the child is adoptable, *Alma S.*, 245 Ariz. at 150-51, ¶¶ 13-14, or if the child "would benefit psychologically from the stability an adoption would provide." *JS-501904*, 180 Ariz. at 352.

**¶18** Here, the children are not in an adoptive placement, but the case manager testified they are adoptable because they are "super cute kids," "[e]xtremely smart," [w]ell-behaved," [o]utgoing, personable," and they had no special needs. Additionally, the case manager testified the children needed permanency, and an individual had expressed interest in adopting them. Thus, while the children did not have a specific adoption plan, reasonable evidence supports the court's finding that the children's adoption is legally possible and likely, making them adoptable.

## CONCLUSION

**¶19** Because the parents have shown no error, we affirm the superior court's order terminating their parental rights.

