SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE FARM INSURANCE COMPANIES, | ) Arizona Supreme Court |
| | ) No. CV-06-0338-PR |
| Plaintiff/Appellant, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-CV 04-0465 |
| PREMIER MANUFACTURED SYSTEMS, | ) |
| INC., an Arizona Corporation, | ) Maricopa County |
| | ) Superior Court |
| Defendant/Appellee. | ) No. CV2001-016394 |
| | ) |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Ruth Harris Hilliard, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
213 Ariz. 419, 142 P.3d 1232 (App. 2006)

**AFFIRMED**

_____

THE SITTU LAW FIRM, P.L.L.C.                              Scottsdale
     By   John D. Sittu
Attorneys for State Farm Insurance Companies

BAIRD, WILLIAMS, & GREER, L.L.P.                          Phoenix
     By   Robert L. Greer
          Craig M. LaChance
Attorneys for Premier Manufactured Systems, Inc.

LAW OFFICES OF CHARLES M. BREWER, LTD.                    Phoenix
     By   Charles M. Brewer
          John B. Brewer
          David L. Abney
          Dane L. Wood
Attorneys for Amicus Curiae
Law Offices of Charles M. Brewer, Ltd.

HARALSON, MILLER, PITT, FELDMAN & McANALLY, P.L.C.        Tucson
    By   Stanley G. Feldman

And

LAW OFFICE OF JOJENE MILLS                                Tucson
    By   JoJene E. Mills

And

ADELMAN GERMAN, P.L.C.                                    Scottsdale
    By   Daniel J. Adelman
Attorneys for Amicus Curiae
Arizona Trial Lawyers Association

BOWMAN AND BROOKE, L.L.P.                                 Phoenix
    By   Jeffrey R. Brooke
         Thomas M. Klein
Attorneys for Amicus Curiae
Product Liability Advisory Council, Inc.
_____

**H U R W I T Z**, Justice

¶1      This case requires us to decide whether liability among tortfeasors in strict products liability actions is joint and several or several only.  We conclude that the legislative abolition of joint and several liability in 1987 extends to strict products liability actions.  In such cases, liability is several only and fault must be apportioned among tortfeasors.

**I.**

¶2      In 2001, an insured of State Farm Insurance Companies ("State Farm") discovered that a leak in his water filtration system had damaged his home and personal property.  State Farm paid the homeowner $19,270.86 to cover the loss.

2

¶3      Premier Manufactured Systems, Inc. ("Premier") assembled, packaged, and sold the water filtration system, which consisted of a series of filters inside plastic canisters linked by tubing.  Worldwide Water Distributing, Ltd. ("Worldwide") manufactured the plastic canisters and sold them to Premier.  As subrogee for its insured, State Farm sued Premier and Worldwide, alleging that each was strictly liable in tort for distributing a defective product.

¶4      Worldwide failed to respond to the complaint, and the superior court entered a default judgment against it.  In a subsequent motion for partial summary judgment, State Farm argued that Worldwide and Premier were jointly and severally liable for 100% of the homeowner's damages.  Premier argued in response that under Arizona Revised Statutes ("A.R.S.") § 12-2506 (2003) the defendants' liability was several only and that the statute required allocation of fault between Premier and Worldwide.  The superior court denied State Farm's motion.

¶5      State Farm and Premier then entered into a stipulated judgment, which stated that the leak had been caused by either a design or manufacturing defect in one of the canisters.  The judgment provided that Worldwide was 75% and Premier 25% at fault and that Premier was liable to State Farm "only to that extent" for the damages caused by the leak.  Because Worldwide had gone out of business and had no insurance coverage, State

3

Farm could therefore recover only 25% of its insured's damages. The stipulation preserved, for purposes of appeal, State Farm's argument that liability of the two defendants should have been joint and several.

¶6      The court of appeals affirmed, holding that under § 12-2506 liability of Premier and Worldwide was several only and that fault must be allocated between them. *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 213 Ariz. 419, 420 ¶ 1, 142 P.3d 1232, 1233 (App. 2006). The court rejected State Farm's argument that applying comparative fault principles to strict products liability actions violated Article 18, Section 6 of the Arizona Constitution. *Id.* at 426 ¶ 28, 142 P.3d at 1239.

¶7      We granted State Farm's petition for review because whether § 12-2506 applies to strict products liability actions is an issue of statewide importance. *See* ARCAP 23(c)(3). We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

**II.**

¶8      The common law generally imposed joint and several liability when the conduct of several persons caused a single injury to a plaintiff. *See, e.g.*, *Holtz v. Holder*, 101 Ariz. 247, 251, 418 P.2d 584, 588 (1966). In such a case, the plaintiff could collect his entire damages from any defendant. *Id.; see also* 2 Dan B. Dobbs, *The Law of Torts* § 385, at 1078

4

(2001); W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 47, at 328-29 (5th ed. 1984).  A defendant who paid the plaintiff's damages, however, could not seek contribution from other tortfeasors.  *Holmes v. Hoemako Hosp.*, 117 Ariz. 403, 405, 573 P.2d 477, 479 (1977); 2 Dobbs, *supra*, § 386, at 1078.  Thus, a single defendant could bear the entire burden of the judgment.

¶9      In 1984, the legislature alleviated the common law's harshness by adopting the Uniform Contribution Among Tortfeasors Act ("UCATA").  1984 Ariz. Sess. Laws ch. 237, § 1 (codified as amended at A.R.S. §§ 12-2501 to -2509 (2003)).[1]  Under UCATA, a jointly liable defendant "who has paid more than his pro rata share of the common liability" can seek contribution from other tortfeasors.  A.R.S. § 12-2501(B).  This right can be enforced either in the underlying tort action or in a separate suit for contribution.  *Id.* § 12-2503(A) & (B).  When a defendant seeks contribution, the finder of fact must apportion liability according to the relative degrees of fault of each tortfeasor. *Id.* § 12-2502(1).

¶10      The 1984 legislation expressly provided that the right to contribution applied to defendants held strictly liable in

---

[1]    The 1984 Arizona bill drew from both the Uniform Contribution Among Tortfeasors Act of 1955 and the Uniform Comparative Fault Act of 1977, while also incorporating a number of provisions unique to Arizona.  *See* Scott Butler, III & G. David Gage, *Comparative Negligence & Uniform Contribution:  New Arizona Law*, 20 Ariz. B.J. 16, 17, 34 (1984).

5

tort for distribution of a defective product. *Id.* § 12-2509(A). The statute provided that, for purposes of apportioning liability among such tortfeasors, "the relative degree of fault of each is the degree to which each contributed to the defect causing injury to the claimant." *Id.* § 12-2509(C).

¶11    The adoption of comparative fault in the 1984 version of UCATA did not entirely protect defendants from paying more than their allocated share of a judgment. The legislation did not alter the common law rule of joint and several liability; each defendant remained liable to the plaintiff for the entire amount of the judgment. The right to contribution was thus of limited or no practical utility if one or more of the tortfeasors were insolvent or if a judgment for contribution could not be collected. Under those circumstances, a defendant who had paid more than his share still absorbed a disproportionate loss. *See Gehres v. City of Phoenix*, 156 Ariz. 484, 487, 753 P.2d 174, 177 (App. 1987).[2]

¶12    The legislature solved this problem in 1987 by

---

[2]    UCATA provides for a redetermination of contribution shares when "all or part of a tortfeasor's contribution share . . . is uncollectible from that tortfeasor." A.R.S. § 12-2508. Although this provision offers potential partial relief to defendants held jointly and severally liable, its application will necessarily result in a defendant paying more than his pro rata share. And, in cases (such as the one before us) in which only one defendant is solvent, § 12-2508 offers no relief to the solvent defendant.

amending UCATA to abolish joint and several liability in most circumstances. 1987 Ariz. Sess. Laws ch. 1. The 1987 amendment, codified at A.R.S. § 12-2506, establishes a system of comparative fault, making "each tortfeasor responsible for paying his or her percentage of fault *and no more*." *Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991). Under this system of several-only liability, plaintiffs, not defendants, bear the risk of insolvent joint tortfeasors.

### A.

¶13    State Farm argues that the general abolition of joint and several liability in 1987 was not intended to apply to parties strictly liable in tort for distributing a defective product. We disagree.

¶14    Under A.R.S. § 12-2506(A),

> [i]n an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, *except as otherwise provided in this section*.

(Emphasis added.) An action for strict products liability is clearly one "for personal injury, property damage or wrongful death." Therefore, under the plain language of the 1987 enactment, each defendant's liability in such an action is several only, subject only to the specific exceptions in § 12-2506.

¶15    Section 12-2506 provides only three exceptions to the

general regime of several-only liability:

> The liability of each defendant is several only and is not joint, except that a party is responsible for the fault of another person, or for payment of the proportionate share of another person, if any of the following applies:
>
> 1. Both the party and the other person were acting in concert.
>
> 2. The other person was acting as an agent or servant of the party.
>
> 3. The party's liability for the fault of another person arises out of a duty created by the federal employers' liability act, 45 United States Code § 51.

*Id.* § 12-2506(D). State Farm correctly concedes that this case falls within neither the first nor the third exception.

¶16    State Farm instead relies upon § 12-2506(D)(2), which imposes joint liability when another person "was acting as an agent or servant of the party." This argument, however, suffers from obvious deficiencies. State Farm does not contend that a conventional principal-agent or master-servant relationship existed between Worldwide and Premier. Premier simply purchased the defective canister from Worldwide and then incorporated it into its water filtration system. The mere purchase of a product from a supplier does not establish a master-servant or principal-agent relationship between the buyer and seller. *See* 2 Dobbs, *supra* ¶ 8, § 335, at 910-13, §§ 336-38, at 917-29; Keeton et al., *supra* ¶ 8, § 70, at 501-08; Restatement (Third) of Agency § 1.01 cmts. b & c (2006).

8

¶17      Instead, relying on *Wiggs v. City of Phoenix*, 198 Ariz. 367, 10 P.3d 625 (2000), State Farm argues that we should impute an agency relationship between Premier and Worldwide for purposes of § 12-2506(D)(2). *Wiggs* involved an automobile accident in which a car struck and killed the plaintiff's teenage daughter as she crossed a Phoenix intersection at dusk. *Id.* at 368 ¶ 2, 10 P.3d at 626. The plaintiff's suit against the City of Phoenix alleged that improper maintenance of a streetlight at the intersection caused the accident. *Id.* at 368 ¶ 3, 10 P.3d at 626.

¶18      The City had contracted with Arizona Public Service ("APS") to operate and maintain the streetlight at the intersection. *Id.* The City named APS as a non-party at fault under A.R.S. § 12-2506(B). *Id.*

¶19      This Court held that the City could not escape or reduce its liability by claiming the tort had been committed by an independent contractor. *Id.* at 371 ¶ 15, 10 P.3d at 629. Rather, because the City had a non-delegable duty to maintain the streetlight, we concluded that the independent contractor was effectively an agent of the City, making the City vicariously liable for any negligence of APS. *Id.* at 370-71 ¶¶ 10, 13, 10 P.3d at 628-29. Thus, the City was responsible for 100% of any fault allocated to APS. *Id.* at 371 ¶ 16, 10 P.3d at 629.

¶20    The *Wiggs* doctrine does not avail State Farm. We may assume, as State Farm argues, that each entity in a chain of distribution has a non-delegable duty not to distribute a defective product. *See, e.g.*, *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 497 (3d Cir. 1985) (stating that under Pennsylvania law, "the duty to provide a non-defective product is non-delegable"); *Vandermark v. Ford Motor Co.*, 391 P.2d 168, 170 (Cal. 1964) (holding that a "manufacturer of a completed product cannot escape liability by tracing the defect to a component part supplied by another"); *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 403 N.E.2d 440, 443 (N.Y. 1980) (noting that a "manufacturer is under a nondelegable duty to design and produce a product that is not defective"). But in a strict products liability action, the various participants in the chain of distribution are liable not for the actions of others, but rather for *their own actions* in distributing the defective product. *Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 402, 904 P.2d 861, 864 (1995) (stating that strict products liability is established by proof that the product was defective when it left the defendant's control, that the defect made the product unreasonably dangerous, and that the defect proximately caused the plaintiff's injuries); *O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 559-60, 447 P.2d 248, 251-52 (1968) (quoting and adopting Restatement (Second) of Torts § 402A (1965)). Thus,

the judgment below did not impose vicarious liability on Premier. Rather, Premier and Worldwide each is liable solely for its own conduct.

¶21    Indeed, the 1987 amendment of UCATA recognizes this principle. The types of fault that must be compared to arrive at an allocation of responsibility for a judgment specifically include strict liability and products liability:

> "Fault" means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product.

A.R.S. § 12-2506(F)(2). In a strict products liability action, every party in the chain of distribution of a defective product has committed its own "actionable breach of legal duty." Fault is thus found because of what each tortfeasor did on its own – distribute a defective product – rather than because of its relationship to other wrongdoers.

### 1.

¶22    State Farm also argues that A.R.S. § 12-2509 contemplates that joint and several liability remains the rule in strict products liability actions. That statute provides for a right of contribution among tortfeasors, including those whose liability is "based on . . . strict liability in tort or any

11

product liability action." *Id.* § 12-2509(A). The statute further specifies that "[a]mong two or more persons strictly liable in tort who are entitled to claim contribution against each other, the relative degree of fault of each is the degree to which each contributed to the defect causing injury to the claimant." *Id.* § 12-2509(C). State Farm argues that these provisions would be wholly unnecessary if the liability of products liability tortfeasors were several only.

¶**23** The argument fails to withstand analysis. Section 12-2509 was enacted as part of the original UCATA in 1984, when joint and several liability was the rule in *all* tort cases. The subsequent 1987 amendment of UCATA, as noted above, abolished joint liability in all actions except those specified in § 12-2506(D). Section 12-2509 provides a right of contribution only when, under the applicable law, two or more tortfeasors are jointly liable; it does not itself enact a general doctrine of joint and several liability in strict liability actions or purport to limit the sweep of the 1987 legislation. *See Dietz*, 169 Ariz. at 510, 821 P.2d at 171 ("With a few specified exceptions, contribution will become virtually unnecessary in actions filed after the effective date of § 12-2506.").

¶**24** Indeed, if we accepted State Farm's argument, § 12-2506 would be entirely vitiated. Section 12-2509(A) refers not only to contribution among tortfeasors in strict liability and

product liability actions, but also among "all tortfeasors whose liability is based on negligence." A reading of the statute requiring joint and several liability in all cases covered by § 12-2509 would render § 12-2506 a dead letter. Rather, the only sensible continued application of § 12-2509 is to the relatively rare situations in which § 12-2506(D) provides for joint and several liability.[3]

## 2.

¶25    State Farm and its amici also argue that the indemnity provisions in A.R.S. § 12-684 (2003) contemplate the continuation of joint and several liability in products liability actions. As an initial matter, this argument suffers from the same flaw as State Farm's arguments about § 12-2509; the indemnification provisions in § 12-684 were first enacted in 1978, and thus can hardly be thought to negate sub silentio the broad abolition of joint and several liability in 1987.

¶26    More important, as the court of appeals correctly recognized, the regime of several-only liability does not conflict with the indemnity statute. *State Farm*, 213 Ariz. at 425 ¶ 24 & n.9, 142 P.3d at 1238 & n.9. Section 12-684(A)

---

[3] Even after the general abolition of joint and several liability in 1987, joint and several liability can be imposed in strict products liability actions under A.R.S. § 12-2506(D)(2) if the entities in a chain of distribution have a true master-servant or principal-agent relationship. Contribution would be allowed under § 12-2509 at least in those situations.

13

provides for a tender of defense by a seller to a manufacturer in a products liability action. A manufacturer rejecting the tender must "indemnify the seller for any judgment rendered against the seller and shall also reimburse the seller for reasonable attorneys' fees and costs incurred by the seller in defending such action," unless the seller had knowledge of the defect or engaged in certain unauthorized modifications or installations of the product at issue. *Id*. § 12-684(A). The statutory scheme does not require joint and several liability of defendants; indemnification is not at all inconsistent with apportionment of fault under § 12-2506. *See Bridgestone/Firestone N. Am. Tire, L.L.C. v. A.P.S. Rent-A-Car & Leasing, Inc.*, 207 Ariz. 502, 511-12 ¶¶ 37-38, 88 P.3d 572, 581-82 (App. 2004).

### 3.

¶27 State Farm and its amici also rely heavily upon opinions from other states holding participants in the chain of distribution jointly and severally liable for an injury caused by a product defect. *See Wimberly v. Derby Cycle Corp.*, 65 Cal. Rptr. 2d 532, 541 (Ct. App. 1997); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 432 (Tenn. 1996). These authorities, however, do not address Arizona's statutory scheme. Given the explicit language of our statutes, we find the Tennessee and California decisions inapposite.

14

**¶28**      *Owens* arose after the adoption of comparative fault by the Tennessee Supreme Court in *McIntyre v. Balentine*, 833 S.W.2d 52, 56, 58 (Tenn. 1992).  After adopting comparative fault as a matter of common law, the court found good policy reasons to limit the sweep of the doctrine in strict products liability actions.  *Owens*, 915 S.W.2d at 432.  Although that decision has much to commend it as a matter of policy, we engage today not in the development of the common law, but rather in statutory interpretation.  Because our legislature abolished joint and several liability in all but the situations specifically enumerated in A.R.S. § 12-2506(D), we are not free to engraft further exceptions into the law simply because we might favor them as a matter of policy.[4]

**¶29**      In *Wimberly*, the California court interpreted a comparative fault statute quite different from § 12-2506.  The California statute did not define "fault" or "comparative fault," *see Wimberly*, 65 Cal. Rptr. 2d at 536, and the court was thus free to conclude that the law did not require allocation of fault in strict products liability actions.

**¶30**      In contrast, our statute specifically includes strict liability and products liability within the types of "fault"

---

[4]    Similarly, Restatement (Third) of Torts: Apportionment of Liability § 7 cmt. j & § 13 cmt. a (2000), which State Farm cites, simply set out preferred common law principles and do not purport to interpret any statute.

that must be apportioned by the finder of fact. A.R.S. § 12-2506(F)(2). As we have previously stated, our statutes do not "limit the application of comparative fault principles to negligence theories." *Jimenez*, 183 Ariz. at 404, 904 P.2d at 866. Rather, the broad definition of fault in A.R.S. § 12-2506(F)(2) requires the finder of fact in strict products liability cases to compare fault among all tortfeasors. *See Zuern v. Ford Motor Co.*, 188 Ariz. 486, 491, 937 P.2d 676, 681 (App. 1996) (noting that because UCATA "expressly defines 'fault' to include 'strict liability,' all of the different types of fault identified in that section, if contributing to the same injury, must be compared . . . in assessing percentages of fault") (citations omitted).

## B.

¶31    State Farm and its amici argue that if § 12-2506 is interpreted to preclude joint and several liability among defendants in a strict products liability action, the statute violates Article 18, Section 6 of the Arizona Constitution. That section provides that

> [t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

## 1.

¶32    The first clause of Article 18, Section 6, the "anti-abrogation clause," protects the right of access to the courts

16

and prevents abrogation of common law tort actions. *Cronin v. Sheldon*, 195 Ariz. 531, 538 ¶ 35, 991 P.2d 231, 238 (1999). A statute that completely abolishes a right of action is by definition an unconstitutional abrogation. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 314 ¶ 33, 70 P.3d 435, 443 (2003). On the other hand, the legislature is entitled to regulate common law tort actions. *Id.* at 313 ¶ 30, 70 P.3d at 442. "We differentiate between abrogation and regulation by determining whether a purported legislative regulation leaves those claiming injury a reasonable possibility of obtaining legal redress." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986). The legislature may not, "under the guise of 'regulation,' so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action." *Barrio v. San Manuel Div. Hosp.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984).

¶33 Strict products liability actions are protected by Article 18, Section 6. *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 344, 861 P.2d 625, 629 (1993). *Hazine* held unconstitutional a statute forbidding the filing of a strict products liability action more than twelve years after the product was first sold to a consumer even if the injury occurred years later. *Id*. at 345, 861 P.2d at 630. Because the statute could abolish the right of action before an injury had even

17

occurred, it deprived an injured claimant of any possibility of redress, and thus violated the anti-abrogation clause. *Id.* at 342, 861 P.2d at 627.

¶34 In contrast, the abolition of joint and several liability in strict products liability cases does not deprive an injured claimant of the right to bring the action. Nor does it prevent the possibility of redress for injuries; the claimant remains entirely free to bring his claim against all responsible parties. Thus, § 12-2506 does not on its face violate the anti-abrogation clause. *Cf*. *Dietz*, 169 Ariz. at 511, 821 P.2d at 172 (finding no violation of anti-abrogation clause in applying comparative fault principles in case involving injuries caused by both the defendant and a statutorily immune employer).

¶35 State Farm and its amici argue, however, that joint and several liability is so integral to the tort of strict products liability that instituting several-only liability effectively abolishes the cause of action. Specifically, they argue that it is impossible to allocate "fault" in strict liability actions and that imposition of several-only liability will effectively deprive claimants of the right to sue "innocent" sellers in the chain of distribution.

¶36 Nothing in § 12-2506, however, prevents a claimant from suing all participants in a defective product's chain of distribution and obtaining a judgment for the full amount of his

18

damages.  Nor does the statute excuse any responsible party from liability.  Under the doctrine of strict products liability, a defendant breaches its legal duty when it distributes a defective and unreasonably dangerous product.  *Torres v. Goodyear Tire & Rubber Co.*, 163 Ariz. 88, 91, 786 P.2d 939, 942 (1990).  A defendant who does so is at "fault" under § 12-2506(F)(2), and a claimant is entitled to recover against any such defendant under the statutory regime of several-only liability.  *See Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1170 (Cal. 1978) (rejecting argument that applying comparative negligence in strict products liability cases "somehow will abolish or adversely affect the liability of such intermediate entities in the chain of distribution" and noting that jurors are capable of fairly assessing the relative legal responsibilities of manufacturers and subsequent distributors in strict products liability actions).

**¶37**     It may, of course, be difficult in some circumstances for the finder of fact to allocate statutory fault among the various participants in the chain of distribution of a defective product.  But this may also often be the case in other contexts.  Notwithstanding the potential difficulty of the task, "[w]e have no doubt that jurors are capable of evaluating degrees of fault, and the statute reflects our legislature's agreement."  *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55 ¶ 21, 961 P.2d

19

449, 453 (1998).[5]

## 2.

¶38      Nor does our application of several-only liability in strict products liability cases violate the second clause of Article 18, Section 6, prohibiting limitations on damages.[6]  In *Jimenez*, we rejected a claim that allowing product misuse as a form of comparative fault under UCATA violated Article 18, Section 6.  183 Ariz. at 407, 904 P.2d at 869.  In so holding,

---

[5]      Indeed, even before the abolition of joint and several liability, UCATA required that finders of fact allocate fault among "two or more persons strictly liable in tort" in determining contribution rights.  A.R.S. § 12-2509(C). Section 12-2509(C) defines "the relative degree of fault," for purposes of determining contribution among two or more defendants strictly liable in tort, as "the degree to which each contributed to the defect causing injury to the claimant."

Because the parties in this case stipulated to the allocation of fault between Premier and Worldwide, we have no occasion today to address the precise standards that should guide a finder of fact in making fault determinations under § 12-2506.  *See State Farm*, 213 Ariz. at 425 ¶ 22, 142 P.2d at 1238 ("[I]t is for the finder of fact to examine and assess the differing conduct, roles, duties, and responsibilities played by all the participants in the distribution chain of an allegedly defective product and to decide, based on these and other relevant considerations, the degree of fault to allocate to members of the chain.").

[6]      Article 2, Section 31 of the Arizona Constitution prohibits enactment of any law "limiting the amount of damages to be recovered for causing the death or injury of any person."  That provision is not implicated in this case, which involves only a claim for property damage.  *Cf. Jimenez*, 183 Ariz. at 407 n.10, 904 P.2d at 869 n.10 (noting that the limitation of damage clause in Article 18, Section 6 and the similar language in Article 2, Section 31 "must be read together and are intended to accomplish the same result").

we directly analogized the misuse defense to "*instituting a several-only system of liability*," which we noted "regulates responsibility for cause rather than limits the damages recoverable." *Id.* (emphasis added). As is true with the misuse defense, several-only liability does not limit the damages recoverable, but rather serves "only to limit each defendant's liability to the damages resulting from that defendant's conduct." *Id.*

¶39 To be sure, an injured claimant may not be able to recover the full amount of his damages under a regime of several-only liability when a defendant is insolvent or full collection of the judgment against each defendant is not possible. But as we stated in *Jimenez*, "almost any statute dealing with tort actions will affect the amount or potential of recovery." *Id.* at 407-08, 904 P.2d at 869-70. Our Constitution provides only that a statute cannot limit the "amount recovered"; it is not a guarantee that the entire judgment will be collectible from a single defendant or indeed from any of the responsible parties. *Id.*

### III.

¶40 For the reasons above, we conclude that the legislature abolished joint and several liability for participants in a defective product's chain of distribution with its amendment in 1987 of A.R.S. § 12-2506 and that this statute

21

does not offend Article 18, Section 6 of the Arizona Constitution. We therefore affirm the judgment of the superior court and the opinion of the court of appeals.


_____
Andrew D. Hurwitz, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice