250 P.3d 220

**Phillip GOVERNALE, a married man, Plaintiff–Appellant,**

v.

**Daniel LIEBERMAN, M.D.; Arizona Center for Neurosurgery, Ltd., an Arizona Corporation, Defendants–Appellees.**

**No. 1 CA–CV 10–0195.**

Court of Appeals of Arizona, Division 1, Department E.

March 10, 2011.

Cantor Simon PLLC by Craig J. Simon, Tempe, Law Offices of David L. Abney, Esq. by David L. Abney, Phoenix, Co–Counsel for Appellant.

The Cavanagh Law Firm, P.A. by Harding B. Cure, Patrick D. White, Taylor C. Young, Phoenix, Attorneys for Appellees.

## OPINION

WEISBERG, Judge.

¶1 Phillip Governale appeals from the grant of summary judgment to Defendants Daniel Lieberman, M.D., and the Arizona Center for Neurosurgery, Ltd. (collectively "Defendants"). Governale argues that the superior court erred in failing to find that Arizona Revised Statutes ("A.R.S.") section 12–2604 (Supp. 2009) violates the Arizona Constitution by its restriction upon Governale's choice of an expert witness in a medical malpractice case. We disagree and hold

that the statute is constitutional and therefore affirm.

## BACKGROUND

¶ 2 In February 2008, Governale filed a complaint against Defendants alleging that Lieberman, a neurosurgeon, had committed medical malpractice during a surgical procedure. Governale's initial disclosure listed Steven H. Richeimer, M.D., as an expert witness who would testify that Lieberman had violated the applicable standard of care. Defendants moved to dismiss the complaint on the ground that Richeimer, a board certified anesthesiologist and pain management specialist, was not qualified under A.R.S. § 12–2604 to offer an opinion that Lieberman had violated the standard of care because the statute required that the standard of care expert be of the same specialty as Lieberman. The trial court agreed and therefore granted Governale additional time to retain a new expert witness.

¶ 3 Soon after the trial court's ruling, this court issued an opinion in *Seisinger v. Siebel,* 219 Ariz. 163, 195 P.3d 200 (App.2008), holding that § 12–2604 violated the separation of powers doctrine. The superior court accordingly granted Governale's motion for reconsideration and denied Defendants' motion to dismiss. The Arizona Supreme Court, however, later vacated our decision and held that § 12–2604 is a substantive statute that does not violate the separation of powers doctrine. *Seisinger v. Siebel,* 220 Ariz. 85, 96, ¶ 42, 203 P.3d 483, 494 (2009).[1]

¶ 4 The Arizona Supreme Court opined that the necessity of expert testimony in a medical malpractice action was a substantive component of the common law and that § 12–2604 modified the common law "to increase a plaintiff's burden of production ... [on] the defendant's departure from the standard of care." *Id.* at 95, ¶ 39, 203 P.3d at 493. Thus, by specifying the type of expert testimony required to establish medical malpractice, the

statute was substantive and did not offend the separation of powers doctrine. *Id.* at 95–96, ¶¶ 39, 42, 203 P.3d at 493–94. The court declined to consider whether the statute violated any other constitutional provision. *Id.* at 96, ¶ 44, 203 P.3d at 494.

¶ 5 Defendants again moved for summary judgment, alleging that Governale did not have the necessary expert testimony to prevail because Richeimer was not qualified under § 12–2604. Governale cross-moved for summary judgment and challenged the statute under the equal protection, due process, antiabrogation, special legislation, and jury trial provisions of the Arizona Constitution.[2] The court granted Defendants' motion and denied Governale's cross-motion. Governale timely appealed from the subsequent judgment. We have jurisdiction of the appeal pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 6 Section 12–2603 requires a party who asserts or defends a claim against a health care professional in a civil action to state whether expert opinion is necessary to prove the relevant standard of care, and if so, to "serve a preliminary expert opinion affidavit with the initial disclosures" required by Arizona Rule of Civil Procedure 26.1. A.R.S. § 12–2603(A), (B) (Supp.2009). Further, the chosen expert must be licensed as a health professional in Arizona or another state, and in the year immediately preceding the event giving rise to suit, must have devoted a majority of his/her "professional time" to either: "active clinical practice of the same health profession as the defendant," or "[t]the instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant." § 12–2604(A)(1), (2). If the defendant claims to be a board certified specialist, the expert must practice or instruct in the defendant's specialty. A.R.S. § 12–2604(A)(1).

---

1. Although Governale asserts that the supreme court's decision should be overruled, we cannot do so and do not address this assertion. *State v. Sullivan,* 205 Ariz. 285, 288, ¶ 15, 69 P.3d 1006, 1009 (App.2003).

2. As required by A.R.S. § 12–1841 (Supp.2009), Governale served a copy of his motion on the attorney general, the speaker of the house, and the president of the senate. None sought to be heard in this action.

¶ 7 Governale's challenge to § 12–2604 under the anti-abrogation, equal protection, due process, special legislation, and jury trial provisions of the Arizona Constitution poses questions of law subject to our *de novo* review. *Long v. Napolitano*, 203 Ariz. 247, 253–54, ¶ 15, 53 P.3d 172, 178–79 (App.2002). Legislation, however, is entitled to a strong presumption of constitutionality, and we construe a statute to give it, if possible, a reasonable and lawful meaning. *Id.* at 254, ¶ 16, 53 P.3d at 179; *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). We first consider the statute's potential conflict with the anti-abrogation clause.

## A. Anti–Abrogation

¶ 8 Article 18, Section 6 of our Constitution states: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." This clause "prevents abrogation of all common law actions for negligence, intentional torts, strict liability, defamation, and other actions in tort which trace origins to the common law." *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 313, ¶ 28, 70 P.3d 435, 442 (2003) (citation and emphasis omitted). Because a medical malpractice action has its origins in the common law, *Seisinger*, 220 Ariz. at 94, ¶ 33, 203 P.3d at 492, it is protected by this clause. Governale contends § 12–2604 infringes the right to bring an action to recover damages for his injuries. We disagree.

¶ 9 The statute does not abolish the right to bring a medical malpractice action and thus is not an abrogation. *Duncan*, 205 Ariz. at 314, ¶ 33, 70 P.3d at 443. Nonetheless, even given this conclusion, we also will consider whether the statute exceeds the parameters of legislative regulation and instead "effectively deprive[s] the claimant of the ability to bring the action." *Id.* at 313, ¶ 30, 70 P.3d at 442; *State Farm Ins. Cos. v. Premier Manuf. Sys., Inc.*, 217 Ariz. 222, 228–29, ¶ 32, 172 P.3d 410, 416–17 (2007). In doing so, we apply the "reasonable election" test by which the legislature may regulate a common law right of action if it leaves a claimant reasonable alternatives for bringing an action and "a reasonable possibility of obtaining legal redress." *Duncan*, 205 Ariz. at 313, ¶¶ 29–30, 70 P.3d at 442; *State Farm Ins.*, 217 Ariz. at 228–29, ¶ 32, 172 P.3d at 416–17.

¶ 10 Governale argues that the statute effectively abrogates his cause of action by preventing him from using his *chosen* expert. But, unlike *Duncan*, in which the statute limited the plaintiff's theory of liability, 205 Ariz. at 313, ¶ 31, 70 P.3d at 442, § 12–2604 merely establishes a particular burden of proof by prescribing who may serve as a qualified expert. *Seisinger*, 220 Ariz. at 95, ¶ 39, 203 P.3d at 493. Thus, the statute's impact is similar to our common law requirement that a plaintiff offer a physician's testimony to establish the applicable standard of care in a medical malpractice action. *Id.* at 94–95, ¶ 35, 203 P.3d at 492–93; *Rodriguez v. Jackson*, 118 Ariz. 13, 17, 574 P.2d 481, 485 (App.1977) (standard of care in negligence case must be established by physician's testimony); *see also Rudy v. Meshorer*, 146 Ariz. 467, 470, 706 P.2d 1234, 1237 (App.1985) (testimony from registered nurse could not establish standard of care psychiatrist had to meet).

¶ 11 Moreover, although the statute limits the potential expert witnesses a plaintiff may employ, it does not effectively prevent him from finding a qualified expert witness or create "insurmountable hurdles to recovery for large and foreseeable classes" of plaintiffs. *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 346, 842 P.2d 1355, 1359 (App.1992). Governale does not assert that he could not find a neurosurgeon to testify on the standard of care but only that no such witness would be as "exceptionally persuasive" and well-qualified as Richeimer. The anti-abrogation clause does not prohibit adoption of evidentiary restrictions or requirements that, in the plaintiff's view, weaken his case by only depriving him of his preferred expert witness. *Id.* ("A party to an action does not have a vested right in a particular remedy or mode of procedure."). Because § 12–2604's specification of an expert witness' qualifications does not abrogate Governale's cause of action or deprive him of

the reasonable possibility of obtaining legal redress, it does not violate the anti-abrogation clause.

## B. Equal Protection/Due Process

█ ¶ 12 The Arizona Constitutional guarantees of equal protection and due process provide: "No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Ariz. Const., art. 2, § 13. "No person shall be deprived of life, liberty, or property without due process of law." Ariz. Const., art. 2, § 4. Governale contends that § 12–2604 arbitrarily burdens and unreasonably discriminates against medical malpractice plaintiffs by imposing more stringent qualifications on experts in such cases.

█ ¶ 13 We have held that "conceptually, the review of due process and equal protection claims is similar." *Church,* 173 Ariz. at 348, 842 P.2d at 1361. The test we apply depends upon whether the statute imposes a burden on a "suspect" class or limits a "fundamental right." *Id.* If it does so, we apply "strict scrutiny" by which the statute must serve a "compelling state interest" and be "necessary" to achieve that objective. *Id.; Kenyon v. Hammer,* 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984) (citations omitted). If the statute does not affect a suspect class or limit a fundamental right, we apply the "rational basis" test and uphold the law if it serves a legitimate state interest and the classification rationally advances that interest. *Church,* 173 Ariz. at 350, 842 P.2d at 1363.[3]

█ ¶ 14 The right to bring a negligence action is a fundamental and constitutionally protected right. *Kenyon,* 142 Ariz. at 83, 688 P.2d at 975.[4] In *Hunter Contracting Co., Inc. v. Superior Court (Maricopa County),* 190 Ariz. 318, 947 P.2d 892 (App.1997), for

example, we reviewed a statutory restriction imposed upon a plaintiff's choice of an expert witness. That statute required one bringing "a claim against a registered professional or contractor"[5] to submit with the complaint an affidavit from a qualified expert, and then required dismissal if the proper affidavit was not timely filed. *Id.* at 320, 947 P.2d at 894. The statute specified that a qualified expert was one licensed to practice or one who taught in the same discipline as the defendant. *Id.* at 321, 947 P.2d at 895. We held that the statute infringed the fundamental right to bring an action against registered professionals or contractors by "significantly narrow[ing] the range of expert witnesses" to persons of the same discipline as the defendant. *Id.* at 324, 947 P.2d at 898.

¶ 15 *Hunter,* however, is distinguishable. By requiring the filing of an expert affidavit with the complaint, even when the substantive law did not mandate use of expert testimony, and requiring dismissal for lack of an affidavit, the statute in *Hunter* created a significant barrier to bringing a cause of action. By contrast, § 12–2604 neither imposes a burden upon a plaintiff at filing nor unduly limits who a plaintiff may employ as an expert. Rather, it specifies the type of evidence a plaintiff must offer to prove one of the elements of a medical malpractice claim. *Seisinger,* 220 Ariz. at 95–96, ¶¶ 39–40, 203 P.3d at 493–94 (legislature may increase burden of proof in medical malpractice case). Just as important, and unlike the statute in *Hunter,* § 12–2604(A) applies to plaintiffs and defendants alike. Thus, it does not infringe the fundamental right to bring a medical malpractice action. Accordingly we apply the rational basis test to determine whether it violates the equal protection or due process clauses of our constitution. *Church,* 173 Ariz. at 350, 842 P.2d at 1363.

█ ¶ 16 We first examine the interest to be served by the statute, and in doing

---

3. An intermediate test, not relevant here, applies to classifications involving gender and illegitimacy. *Kenyon,* 142 Ariz. at 78, 688 P.2d at 970; *Church,* 173 Ariz. at 349, 842 P.2d at 1362.

4. Governale contends that medical malpractice plaintiffs resemble "suspect" classes based on race or national origin but our supreme court

has rejected this contention. *Kenyon,* 142 Ariz. at 79, 688 P.2d at 971.

5. The statute defined a "registered professional" as "any registered architect, assayer, engineer, geologist, landscape architect or land surveyor." *Id.* at 320, 947 P.2d at 894.

so may consider either the legislature's stated goal "or any hypothetical basis on which it might have acted." *Church*, 173 Ariz. at 350, 842 P.2d at 1363 (citation omitted). Defendants assert that the legislature wished to serve a legitimate state interest in avoiding a shortage of qualified physicians as a result of continued increases in medical malpractice insurance premiums. Governale responds that medical malpractice claims and the size of judgments awarded in Arizona declined between 2001 and 2008 and that rising insurance rates are due to vicissitudes of the insurance market rather than a litigation crisis.

¶ 17 The legislature might well have been motivated by a legitimate state interest in the protection of public health by means that decrease medical care costs or increase the availability of medical services. *See, e.g., Kenyon*, 142 Ariz. at 84, 688 P.2d at 976 (state may have interest in encouraging provision of quality medical care); *State v. Watson*, 198 Ariz. 48, 53, 6 P.3d 752, 757 (App. 2000) (proper governmental goal is to safeguard health, safety, and welfare). Excerpts from the legislative history of § 12–2604 reveal concern over the impact of increasing medical malpractice insurance rates on health care, and in *Seisinger*, the court noted that § 12–2604 could be viewed as an attempt to address "what [the legislature] believes to be a serious substantive problem—the effects on public health of increased medical malpractice insurance rates and the reluctance of qualified physicians to practice here." 220 Ariz. at 96, ¶ 41, 203 P.3d at 494. We therefore conclude that the legislature intended to address a legitimate governmental interest and next address whether the statute is rationally related to achieving that end. *Church*, 173 Ariz. at 351, 842 P.2d at 1364 (existence of other means does not render law unreasonable); *Kenyon*, 142 Ariz. at 78, 688 P.2d at 970 (objective may be debatable but still reasonable).

¶ 18 Although Governale disputes that medical malpractice claims and judgments have caused increased medical malpractice insurance premiums, he has not overcome the presumption of constitutionality by "a clear showing of arbitrariness and irrationali-

ty." *Church*, 173 Ariz. at 350, 842 P.2d at 1363. The statute modifies the common law with respect to a single element of a medical malpractice claim: departure from the standard of care. *Seisinger*, 220 Ariz. at 95, ¶ 39, 203 P.3d at 493. The legislature may have reasonably decided that requiring an expert witness to practice in the same specialty as the defendant would reduce the likelihood that, due to differences in training or education, such witness would misstate or misunderstand the applicable standard of care. The statute also would prevent experts from testifying in areas beyond their realm of expertise. Thus, it would discourage both meritless claims and meritless defenses and thereby curb the rise in medical malpractice insurance rates while increasing the availability of quality health care.

¶ 19 Because § 12–2604 is rationally related to the legislative goal and does not infringe a fundamental right, it is facially valid and does not violate the equal protection and due process clauses of the Arizona Constitution.

## C. Special Law

¶ 20 Governale next contends § 12–2604 is a local or special law prohibited by Article 4, Part 2, section 19 of the Arizona Constitution. "A 'special law' confers rights and privileges on particular members of a class or to an arbitrarily-drawn class that is not rationally related to a legitimate governmental purpose, while a 'general law' applies to all persons of a reasonably defined class." *Long*, 203 Ariz. at 253, ¶ 13, 53 P.3d at 178. However, "[l]egislation does not violate the special law prohibition if (1) the classification is rationally related to a legitimate governmental objective, (2) the classification is legitimate, encompassing all members of the relevant class, and (3) the class is elastic, allowing members to move in and out of it." *Id.* at ¶ 14.

¶ 21 As noted above, § 12–2604 serves the legitimate purpose of protecting the public health by addressing rising medical malpractice insurance rates. It applies uniformly to all members of the classes of health care providers and to persons suing them. Moreover, the legislature reasonably could have

decided that increasing the burden of proof with respect to the standard of care would restrain medical malpractice insurance rate increases by reducing the potential for frivolous lawsuits and frivolous defenses. *See Seisinger*, 220 Ariz. at 96, ¶ 41, 203 P.3d at 494. Further, the classification is sufficiently elastic to admit entry of additional persons or to allow others to exit the class as the facts dictate. Accordingly, the statute is not a forbidden special law.

## D. Right to a Jury Trial

¶ 22 Relying upon the Arizona Constitutional mandate that the "right of trial by jury shall remain inviolate," Article 2, Section 23 and Article 6, Section 17, Governale argues § 12–2604 denies his right to a jury trial because it will not allow him to present the testimony of an otherwise qualified expert witness and thereby compromises his ability to present a persuasive, well-prepared case to a jury.

¶ 23 The statute, however, does not eliminate a medical malpractice plaintiff's right to have a claim fully and finally determined by a jury. *See Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977) (statute requiring medical malpractice claim first be submitted to review panel before jury trial did not violate jury trial right because jury still was "final arbiter" of facts and issues). The statute is a proper exercise of the legislature's power to prescribe the elements of a medical malpractice cause of action, *Seisinger*, 220 Ariz. at 95, ¶ 39, 203 P.3d at 493, and does not unconstitutionally abridge the right to a jury trial.[6]

## E. Access to the Courts

¶ 24 Finally, Governale argues that § 12–2604 violates the general right to access to the courts and cites the due process, equal protection, and anti-abrogation clauses of the Arizona Constitution. As noted above, the statute does not violate any of these provisions. Furthermore, we are not persuaded by Governale's citation to *Zeier v. Zimmer, Inc.*, 152 P.3d 861, 872–73 (Okla.2006). The Oklahoma Supreme Court ruled there that a statute mandating the filing of an affidavit of merit with a medical malpractice complaint was a monetary barrier in violation of a state constitutional guarantee of access to the courts. That requirement, however, is similar to the requirement disapproved in *Hunter*, and not at all similar to the even-handed requirement that we approve of here. We, therefore, do not find it persuasive.

## CONCLUSION

¶ 25 For the foregoing reasons, we conclude that A.R.S. § 12–2604 does not violate the Arizona Constitution's anti-abrogation, equal protection, due process, special legislation, and jury trial provisions. We therefore affirm the superior court's grant of summary judgment to Defendants.

CONCURRING: PHILIP HALL, Presiding Judge and PETER B. SWANN, Judge.

---

**6.** We are unpersuaded by Governale's citation to *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731, 691 S.E.2d 218, 223 (2010), in which the Georgia Supreme Court held that a statute limiting non-economic damages violated Georgia's constitutional jury trial guarantee by nullifying the jury's findings of damages and undermining its basic function. Section 12–2604 does not bar the jury from determining any element of a medical malpractice claim.